**DEREK SMITH LAW GROUP, PLLC**
Caroline H. Miller, Esq.
Attorney I.D. No. 321420
1628 Pine Street
Philadelphia, PA 19103
Phone: (215) 391-4790
Email: caroline@dereksmithlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ----------------------------------------<br>MICHELE SCHMIDT,<br><br>    Plaintiff,<br><br>v.<br><br>NORTH MONTCO TECHNICAL CAREER<br>CENTER, GINA PARDOVICH, *individually and in*<br>*her professional capacity,* STEPHEN MONASTRA,<br>*individually and in his professional capacity,* and<br>JERI REINKING, *individually and in her professional*<br>*capacity,*<br><br>    Defendants.<br>---------------------------------------- | Civil Action No. 2:26-CV-02138<br><br>**PLAINTIFF DEMANDS A**<br>**TRIAL BY JURY** |

### COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff Michele Schmidt ("Plaintiff" or "Ms. Schmidt"), by and through her attorneys, Derek Smith Law Group, PLLC, brings this action against Defendants North Montco Technical Career Center, Gina Pardovich, Stephen Monastra, and Jeri Reinking (hereinafter referred to collectively as the "Defendants"), upon both information and belief, alleges as follows:

### INTRODUCTION

1. Plaintiff, Michele E. Schmidt is seeking damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, being discriminated against by her employer on the basis of her pregnancy, gender/sex and disability, including but not limited to being subjected to an

1

abrasive unlawfully harassing work environment, refusal to accommodate Plaintiff, retaliation and wrongful termination.

2. Ms. Schmidt brings this action for monetary damages and all other appropriate relief as deemed appropriate by this Court to remedy unlawful discrimination, hostile work environment, and retaliation in violation of pursuant to 42 U.S.C. §§ 12101 ("Section 1983"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg *et seq.* ("PWFA"); the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the Fair Labor Standards Act of 1938, as amended by the Providing Urgent Maternal Protections for Nursing Mothers Act ("PUMP Act"), 29 U.S.C. § 207(r); 42 U.S.C. § 1983; and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* ("PHRA"), and to redress the Defendants' collective unlawful employment practices in violations of the above Federl and State laws.

## **JURISDICTION AND VENUE**

3. This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to the varying Federal, State, and City/County laws.

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 42 U.S.C. §§ 12101, 42 U.S.C. §2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3).

5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

6. In accordance with the Federal Rules of Civil Procedure, venue is proper in this district based upon the fact that Defendants' unlawful and immoral actions in violation of Plaintiff's rights occurred within the Eastern District of Pennsylvania. Furthermore, Defendants are and still is

believed to be located in this judicial district, including but not limited to owning and operating a business within the district. In sum, a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district.

7. As such venue is proper in this Court pursuant to 28 U.S.C. §1391.

**<u>PARTIES</u>**

8. Mrs. Schmidt is an individual woman who is a resident of Quakertown, Pennsylvania, in Montgomery County, is over the age of eighteen years, and is otherwise *sui juris*.

9. At all times material, Defendant North Montco Technical Career Center (hereinafter referred to as "Defendant NMTCC") was and continues to operate as a Pennsylvania School District established pursuant to the Public-School Code of 1949, the Act of March 10, 1949, P.L. 30, as amended, with its principal place of business located at 1265 Sumneytown Pike, Landsdale, Pennsylvania 19446 (hereinafter referred to as the "School") and funded through public money derived from its cooperating school districts.

10. At all times material, Defendant NMTCC was and still is a publicly funded secondary school which, *inter alia*, educates public school students in various trades.

11. At all times material, Defendant NMTCC provides vocational educational training and programming to students, aged ninth through twelfth grade, within select participating school districts in Montgomery County.

12. At all times material, Defendant NMTCC was Ms. Schmidt's joint and/or sole employer. Defendant NMTCC maintained the ability to modify Plaintiff's employment, including but not limited to changing Plaintiff's scheduled working hours, assignments, and location, as well as the ability to hire and/or fire Plaintiff.

3

13. Defendant NMTCC is a "person" within the meaning of 42 U.S.C. §2000e(a) and an "employer" within the meaning of 42 U.S.C. §2000e(b).

14. At all times material, Defendant NMTCC has been continuously doing business in the Commonwealth of Pennsylvania and has continuously held at least 15 employees for all relevant calendar years, in accordance with 42 U.S.C. §2000e(b) and 42 U.S.C. § 12111(5).

15. Defendant NMTCC's exact number of employees is unknown to Plaintiff, but upon information and belief, there are well more employees than the statutory minimum.

16. At all times material, Defendant NMTCC was Mrs. Schmidt's employer.

17. At all times material hereto, Ms. Gina Pardovich (hereinafter as "Defendant Pardovich"), was Defendant NMTCC's "Administrative Director." As such, Defendant Pardovich asserted final and absolute supervisory authority over Plaintiff. In this role, Defendant Pardovich maintained operational control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

18. Upon information and belief, Defendant Pardovich is believed to be an able-bodied female.

19. At all times material hereto, Dr. Stephen Monastra (hereinafter as "Defendant Monastra"), was Defendant NMTCC's "Principal." As such, Defendant Monastra asserted final and absolute supervisory authority over Plaintiff. In his role, Defendant Monastra maintained operational control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

20. Upon information and belief, Defendant Monastra is believed to be an able-bodied male.

21. At all times material hereto, Ms. Jeri Reinking (hereinafter as "Defendant Reinking"), was Defendant NMTCC's "Business Manager." As such, Defendant Reinking asserted final and absolute supervisory authority over Plaintiff. In his role, Defendant Reinking maintained

operational control over Plaintiff, including the ability to hire, fire, adjust hours, reprimand, promote, and/or demote Plaintiff.

22. At all times material, Defendant Reinking is believed to be an able-bodied female.

23. Each Defendant sued in this action has acted, in all respects pertinent to this action, as the other Defendant's agent, and has carried out a joint scheme, enterprise, business plan, or policy in all respects pertinent hereto. The acts of each Defendant are therefore legally attributable to the other Defendant(s).

**<u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>**

24. On or about February 11, 2025, Plaintiff dual-filed her charge for discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"), setting forth Defendants' violations of Title VII and PHRA (Charge No. 530-2025-03529).

25. Plaintiff by and through their attorney requested that their Charge be simultaneously filed with the EEOC, PHRC, and any other State or local agency with whom these Agencies had a work sharing agreement.

26. On or about March 30, 2026, the EEOC issued the Plaintiff a Right to Sue Letter.

27. This action is being commenced within ninety (90) days of Plaintiff receiving the above referenced Notice of Right to Sue.

28. This action is being commenced more than one year after Plaintiff's initial agency filing date. To date no determination has been made by the PHRC relating to the herein complaint

29. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

**MATERIAL FACTS**

30. On or around January 23, 2006, Defendant NMTCC hired Plaintiff as a full-time "English Teacher."

31. Throughout her first fifteen (15) years of employment with Defendant NMTCC, Plaintiff took immense pride in her work, frequently meeting if not exceeding the expectations of her employer.

32. In fact, Plaintiff Schmidt became a source of continuity and support for her students, providing them with a classroom where they felt safe and capable of learning comfortably.

33. In or around June 2019, Plaintiff learned that she was expecting her first child, a son.

34. In or around July 2019, Plaintiff Schmidt proactively notified Defendant NMTCC's Administrative Director, Defendant Pardovich, of the exciting news, in an effort to ensure transparency and provide sufficient time for her employer so that all classroom coverage could be properly coordinated.

35. Despite ensuring she would actively protect Plaintiff Schmidt's privacy, particularly in light of the early status of her pregnancy, Defendant Pardovich almost instantaneously broke Plaintiff Schmidt's trust by unjustifiably sharing the news with her teaching colleague, Mark DeNicola.

36. Upon information and belief, Defendant Pardovich knew she had broken Plaintiff Schmidt's trust and confidence as she also instructed Mr. DeNicola to refrain from mentioning or in any way suggesting that he was aware of Plaintiff Schmidt's otherwise unannounced pregnancy.

37. Following her first pregnancy, and despite the known violation of trust, Plaintiff Schmidt returned to work following her first pregnancy without delay, eager to continue instructing her students.

6

38. In or around August 2020, Defendant NMTCC made Plaintiff a "PYAP[1] Coordinator," in turn making her responsible for managing academic programing from Defendants.

39. On or around July 4, 2021, Plaintiff found out she was pregnant with her second child.

40. Later that same month, Plaintiff Schmidt informed Defendant Stephen Monastra, of her second pregnancy. Defendant Monastra advised Plaintiff that he would be looping in Defendant Pardovich.

41. As a result, and aware of Defendant Pardovich's history of being incapable of keeping Plaintiff's medical history confidential, Plaintiff requested that she be expressly reminded and instructed not to share her pregnancy news until Plaintiff was ready to share the news personally.

42. Despite the assurances, in or around August 2021, Plaintiff Schmidt was shocked to discover that Defendant Pardovich was again openly disclosing and discussing Plaintiff's pregnancy status with her colleagues expressly against Plaintiff's instructions and repeated requests.

43. In or around September 2021, having been informed that Plaintiff's unborn child was non-viable due to a diagnosis of Trisomy 18, Plaintiff and her family made the unfortunate decision to terminate the pregnancy.

44. On or around September 17, 2021, Plaintiff's doctors performed a Dilation and Evacuation (D & E") Procedure, formally terminating Plaintiff pregnancy.

45. Compounded with the heartbreaking loss of her unborn child, Plaintiff was now responsible for sharing with her colleagues the tragic circumstances leading to her decision to terminate her pregnancy, a nightmare she had feared would occur should others disclose her pregnancy status against her will.

---

[1] "PYAP" stands for the Pennsylvania Youth Apprenticeship Program.

46. Over the following weeks, the emotional toll became too much, and Plaintiff had to seek medical leave to focus on her recovery.

47. Accordingly, in or around November 2021, Plaintiff Schmidt applied for a medical leave of absence under the Family and Medical Leave Act with Defendant NMTCC.

48. Plaintiff Schmidt completed the necessary paperwork identifying the need for her leave due to ongoing anxiety and depression relating to her terminated/aborted pregnancy.

49. On or around November 23, 2021, Defendant NMTCC approved Plaintiff to take intermittent medical leave through June 14, 2022, the remainder of the school year.

50. On or around April 7, 2022, Plaintiff Schmidt suffered a severe panic attack during a meeting with Defendant Monastra and Defendant NMTCC's Business Manager, Defendant Jeri Reinking.

51. In or around the Fall of 2022, Defendant Pardovich began a calculated and targeted effort to retaliate against Plaintiff Schmidt as a result of Plaintiff's medical leave and in response to her disapproval of Plaintiff's decision to terminate her pregnancy, despite medical necessity.

52. By means of example and not meant to be an exhaustive list, in the Fall of 2022 during a meeting with the Union Officers and Representatives, Defendant Pardovich baselessly and maliciously accused Plaintiff Schmidt of "bullying" an Instructional Assistant ("IA").

53. Upon meeting with Defendant Pardovich, Defendant Monastra, and Defendant Reinking, the IA in question unequivocally and without hesitation denied any accusations being levied against Plaintiff Schmidt.

54. In or around January 2023, having endured persistent false allegations and attacks by Defendant Pardovich, Plaintiff's underlying anxiety and depression were exasperated, thereby necessitating additional medical intervention.

55. As a result of the allegations and attacks, on or around January 18, 2023, Plaintiff Schmidt applied again for Intermittent FMLA Leave to focus on her mental health recovery.

56. On or around May 9, 2023, Defendants Pardovich and Reinking abruptly and unexpected removed Plaintiff Scmidt from her Classroom during Third Period.

57. Defendants Pardovich and Reinking proceeded to reprimand Plaintiff Schmidt, asserting that she had shared personnel information about Mr. Mark DeNicola and Mr. Matt Tornetta's furlough status with Defendant NMTCC, without their respective knowledge or consent.

58. This accusation was again wholly baseless as both Mr. DeNicola and Mr. Tornetta had authorized Plaintiff *in writing* to share this information.

59. Despite providing Plaintiff a written warning reflecting that one of the men "felt embarrassment over it," upon information and belief neither man was interviewed and asked for provide information regarding the decision, let alone expressed embarrassment.

60. Plaintiff Schmidt however, was deeply humiliated by the repeated targeted attacks and ongoing escalation of mistreatment by her management team.

61. Shortly thereafter, Plaintiff Schmidt contacted her PSEA Union Representative in an effort to ascertain the best approach for the safety of her employment and the ongoing education of her students.

62. Upon inquiring about proper steps to file a formal grievance against Defendant Pardovich, Plaintiff was instructed to reconsider, being informed that if she took action, Defendant Pardovich *would retaliate*.

63. Plaintiff was at a loss: she was being targeted without any mechanism to redress or prevent Defendant Pardovich's conduct from further escalating.

64. On or around May 23, 2023, Defendants provided Plaintiff with her annual performance evaluation.

65. After over fifteen years of employment and despite not providing warning or notice, Defendants provided Plaintiff with a remarkably low evaluation. In fact, as it relates to "Classroom Environment" and "Professional Responsibilities," Plaintiff received merely a score of "1."

66. Defendants' Management Team took the opportunity to provide a targeted negative evaluation of Plaintiff.

67. Moreover, Defendants failed to provide any avenues of growth or suggested constructive criticism to aid in her development.

68. Knowing these allegations to be wholly contrived and false, Plaintiff refused to sign the evaluation.

69. Furthermore, when she inquired regarding provided a rebuttal in writing, Plaintiff's Union Representatives advised there was "not much" they could do in her defense.

70. To this point, Defendants Management team consistently provided Plaintiff with positive if not glowing reviews of the Classroom Environment she personally cultivated.

71. In or around August 2023, Defendant NMTCC advised Plaintiff that she no longer reported to Defendant Monastra. Instead, Plaintiff was to report to the Assistant Director, BethAnn Haas.

72. Upon taking over supervisory duties over Plaintiff, Dr. Haas began actively inspecting and evaluating Plaintiff's performance, surveying her students, teachers, and support staff for "feedback" within the program.

73. On or around October 20, 2023, Dr. Haas issued a PYAP Needs Assessment, seemingly targeting the program and portraying it in a false and negative light.

74. As a result, the Academic Teaching Staff were required to meet with both Defendant Pardovich and Dr. Haas to discuss how the program was being operated/portrayed, all the while advising the staff that there was no need to worry about their jobs.

75. In or around November 2023, during a program wide "In-Service" Day, Dr. Haas and Plaintiff met with the staff to advise as to minor changes and adjustments to the Program moving forward.

76. Despite the above, Plaintiff Schmidt continued to feel as though she was being targeted, that the Administration was preparing to take another adverse step directed at Plaintiff.

77. On or around January 29, 2024, Plaintiff notified her Union Representatives, advising of her fear of retribution and ongoing retaliation, and expressing her fear that the Administration was preparing to take action against her.

78. Plaintiff was informed that she was expressly prohibited from communicating with new students and was additionally excluded from many PYAP New Student Interviews, despite having previously been unilaterally in charge of said interviews.

79. On or around February 1, 2024, Defendants issued Plaintiff a "Loudermill" notice for "Unprofessional Behavior."

80. Upon information and belief, this Notice was a result of a conversation which occurred between Plaintiff and a handful of students during Homeroom.

81. During said discussion, the students expressed anger and frustration rolling over from an argument on social media.

82. Unbeknownst to Plaintiff following this meeting, Defendant Monastra had communicated with a parent regarding the underlying student dispute.

11

83. At no time prior to issuing Plaintiff the Loudermill Notice did Defendants taken any action or effort to discuss any alleged "Unprofessional Behavior" with Plaintiff.

84. Furthermore, in response to said Notice, Plaintiff sought to file a Union Grievance, at which point her Union Representative refused to participate and Assist Plaintiff in filing said grievance, resulting in her isolation and any meaningful guidance.

85. As a result of the discriminatory and retaliatory environment, in or around February 2024, Plaintiff Schmidt applied a third time for FMLA Leave to focus on her mental health.

86. At or around that same time, Defendant NMTCC announced that two Academic Teachers were expected to be Furloughed.

87. On or around March 18, 2024, Defendant NMTCC announced that Dr. Haas was being promoted to "Director" and Defendant Monastra was being promoted to "Assistant Director," effective for the school year 2024-2025.

88. On or around March 20, 2024, Defendants wrongfully and unlawfully furloughed Plaintiff.

89. Defendants wrongfully furloughed Ms. Schmidt because of her gender/sex and disability and in retaliation for her ongoing complaints of unlawful treatment and requests for accommodation.

90. Upon information and belief, following Defendants' decision to unlawfully terminate Plaintiff, Defendants further demonstrated its' discriminatory intent and bias through continued acts of unlawful conduct.

91. On or around April 17, 2024, Plaintiff Schmidt was contacted by a student indicating that said student felt that a friend was being falsely accused of sexual harassment.

92. On or around April 18, 2024, concerned about the underlying conduct and aware of her obligations as a teacher under the Pennsylvania Educator Discipline Act and/or Code of

Professional Practice and Conduct fort Educators, Plaintiff immediately consulted with the student Career Counselor, Kira O'Brien.

93. In no uncertain terms, Plaintiff confirmed with the Counselor as to whether she should notify ChildLine as a mandatory reporter. The Counselor expressly advised Plaintiff that she did not need to file a report/notify ChildLine as she herself had reported the allegations, and the parents as well as the police were already involved.

94. On or around May 2, 2024, Defendant Pardovich and Defendant Monastra called Plaintiff into Defendant Pardovich's office for an impromptu meeting. Defendant Pardovich inquired as to whether Plaintiff had filed a report with ChildLine.

95. Plaintiff Schmidt responded "no," quickly asking if she was supposed to do so. Defendant Pardovich responded simply that she "was not sure" and was only just beginning an "investigation."

96. On or around May 7, 2024, Defendant Pardovich approached Plaintiff while she was in her classroom. Defendant Pardovich advised Plaintiff Schmidt that she must leave the school immediately as she was being Suspended for not filing a complaint the ChildLine.

97. Defendant Pardovich proceeded to take Plaintiff's keys, ID Badge and instructed the Dean of Student, Tammy Albanesius, to escort Plaintiff Schmidt off the property.

98. On or around May 9, 2024, Defendant NMTCC conducted a "Hearing" regarding Plaintiff's employment status.

99. On or around May 16, 2024, Defendant NMTCC advised Plaintiff that she was being retroactively Suspended Without Pay, effective May 13, 2024.

100. As further retaliation and in an effort to permanently and irrevocably destroy Plaintiff Schmidt's career, Defendant NMTCC filed an Educator Misconduct Complaint with the

Commonwealth of Pennsylvania, which could result in the permanent loss of Plaintiff's educator's license.

101. Furthermore, Defendants wrongfully and unlawfully terminated Plaintiff. Defendants wrongfully terminated Ms. Schmidt because of her gender/sex and disability, and in retaliation for her ongoing requests for accommodation and complaints of unlawful treatment.

102. Defendants, jointly and severally, exhibited and continue to exhibit a pattern and practice of discrimination. Accordingly, Plaintiff therefore makes all claims herein under the continuing violations doctrine.

103. The foregoing are just some examples of the hostile work environment, unlawful discrimination, and employer retaliation to which the Defendants subjected Plaintiff.

104. As a result of Defendants' collective and individual actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

105. At all times material hereto, Defendant NMTCC's ownership, supervisors and management acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

106. As a result of Defendants' unlawful acts and conduct, Plaintiff suffered and will continue to suffer damages, including but not limited to financial and economic damages, lost wages (back pay and front pay) and benefits, advancement opportunities within Defendant NMTCC, compensatory damages, and continues to suffer same. Plaintiff Schmidt has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages.

107. Defendants' conduct had been malicious, willful, extreme, and outrageous, and with full knowledge of the law, Plaintiff respectfully seeks all available damages including but not

limited to emotional distress, lost wages, back pay, front pay, statutory damages, attorney's fees, costs, interest, and punitive damages, jointly and solely, as against the Defendants.

108. Defendants are either directly or vicariously responsible for the unlawful acts and conduct complained of herein.

**COUNT I**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Gender/Sex Discrimination – Disparate Treatment**
**(Against Defendant NMTCC)**

109. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

110. Title VII makes it an unlawful employment practice for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's sex. *42 U.S.C. § 2000e-2(a)*.

111. Discrimination on the basis of pregnancy, childbirth, or related medical conditions constitutes sex discrimination under Title VII.

112. Plaintiff is female and was pregnant at all relevant times.

113. Plaintiff was qualified for her position as an English teacher based on her education, credentials, and nearly twenty (20) years of experience in the role.

114. Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

    a. Contrived and false performance reviews following Plaintiff's request for intermittent leave;

    b. Baseless accusations of bullying other employees; and,

    c. Higher levels of scrutiny and criticism with regard to Plaintiff's work performance

115. The circumstances surrounding Plaintiff's furlough, subsequent treatment, and eventual termination give rise to an inference of discrimination based on sex and pregnancy.

15

116. Defendants' proffered reasons for their actions are pretextual, as evidenced by the lack of any disciplinary action against Plaintiff prior to her request for FMLA, and the contrived performance reviews that occurred subsequently.

117. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

**COUNT II**
**Title VII, 42 U.S.C. § 2000e-2(a)**
**Gender/Sex Discrimination – Hostile Work Environment**
**(Against Defendant NMTCC School District)**

118. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

119. Plaintiff is a member of a protected class based on her sex and pregnancy status.

120. Plaintiff has been subjected to unwelcome harassment based on her sex and pregnancy, including but not limited to:

   a. Punitive disciplinary action based on inequitably applied policies and procedures;

   b. Heightened scrutiny not applied to her similarly situated colleagues;

   c. Hostile interrogation during contrived disciplinary proceedings; and

   d. Failure to respond to legitimate inquiries;

121. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

122. Defendant NMTCC is liable for the hostile work environment because the harassment was committed by Plaintiff's supervisors and resulted in tangible employment actions against Plaintiff.

123. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, humiliation, loss of dignity, and interference with her ability to perform her job.

**COUNT III**
**Title VII, 42 U.S.C. § 2000e-3(a)**
**Gender/Sex Discrimination – Retaliation**
**(Against Defendant NMTCC School District)**

124. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

125. Title VII prohibits retaliation against an employee because the employee has opposed any practice made unlawful by Title VII or has participated in any proceeding under Title VII. 42 U.S.C. § 2000e-3(a).

126. Plaintiff engaged in protected activity by requesting intermittent medical leave pursuant to the FMLA. Plaintiff further engaged in protected activity by attempting to file a Union Grievance regarding the

127. Following her protected activity, Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

   a. Subjecting her to increased scrutiny and criticism;

   b. Refusing to respond to her legitimate inquiries about her schedule and position;

   c. Subjecting her to a hostile interrogation regarding conversations had with students;

   d. Failing to properly investigate her complaints;

   e. Threatening Plaintiff with retaliation should she file a formal complaint or union grievance.; and

128. There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the timing of Defendants' actions and their stated reluctance to communicate with Plaintiff due to the EEOC proceedings.

17

## COUNT IV
### Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. 2000gg
### (Against All Defendants)

129. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

130. The Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. § 2000gg et seq., requires covered employers to provide reasonable accommodations to qualified employees for known limitations related to pregnancy, childbirth, or related medical conditions, unless the accommodation would cause an undue hardship.

131. Defendant NMTCC is a covered employer under the PWFA.

132. Plaintiff had known limitations related to her second pregnancy, including but not limited to the need recover from a medically necessary termination.

133. Plaintiff requested reasonable accommodation from Defendants, including intermittent medical leave.

134. Defendants failed to provide Plaintiff with reasonable accommodations in that they immediately began a campaign of harassment and contrived disciplinary action upon Plaintiff's request for intermittent medical leave.

135. Defendants failed to engage in a good faith interactive process with Plaintiff to identify and implement reasonable accommodations.

136. Providing reasonable accommodations for Plaintiff's needs would not have caused undue hardship to Defendant NMTCC.

137. As a direct and proximate result of Defendants' failure to provide reasonable accommodations, Plaintiff has suffered damages including, but not limited to, physical discomfort, emotional distress, interference with her ability to nurse her child, and humiliation.

## COUNT V
## PHRA, as amended, 43 P.S. § 955 (a)
## Sex and Pregnancy Discrimination – Disparate Treatment
## (Against All Defendants)

138. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

139. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 et seq., prohibits employers from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of the individual's sex.

140. Discrimination on the basis of pregnancy constitutes sex discrimination under the PHRA.

141. The PHRA imposes individual liability on any person who aids, abets, incites, compels, or coerces, or directly or indirectly commits unlawful discrimination. 43 Pa. Stat. Ann. § 955(e).

142. Plaintiff is female and was pregnant at all relevant times.

143. Plaintiff was qualified for her position as an English teacher based on her education, credentials, and nearly twenty (20) years of experience in the role.

144. Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

  a. Contrived and false performance reviews following Plaintiff's request for intermittent leave;

  b. Baseless accusations of bullying other employees; and,

  c. Higher levels of scrutiny and criticism with regard to Plaintiff's work performance

145. The circumstances surrounding Plaintiff's furlough, subsequent treatment, and eventual termination give rise to an inference of discrimination based on sex and pregnancy.

146. Defendants' proffered reasons for their actions are pretextual, as evidenced by the lack of any disciplinary action against Plaintiff prior to her request for FMLA, and the contrived performance reviews that occurred subsequently.

147. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

**COUNT VI**
**PHRA, as amended, 43 P.S. § 955 (a)**
**Pregnancy Discrimination – Hostile Work Environment**
**(Against All Defendants)**

148. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

149. Similarly, the PHRA also prohibits hostile work environment harassment, which is harassing conduct in the workplace that would not have occurred but for one of the above-mentioned protected characteristics of the employee (e.g., pregnancy) that is severe or pervasive enough to make a reasonable person with that protected characteristic (e.g., a reasonable person of the involved sex/gender) believe the conditions of the workplace are altered and the working environment is hostile or abusive. Hoy v. Angelone, 691 A.2d 476, (Pa. Super. 1997).

150. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

151. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

152. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

153. Plaintiff was subjected to unwelcome harassment based on her sex and pregnancy status that was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment.

154. Plaintiff is a member of a protected class based on her sex and pregnancy status.

155. Plaintiff has been subjected to unwelcome harassment based on her sex and pregnancy, including but not limited to:

    a. Punitive disciplinary action based on inequitably applied policies and procedures;

    b. Heightened scrutiny not applied to her similarly situated colleagues;

    c. Hostile interrogation during contrived disciplinary proceedings; and

    d. Failure to respond to legitimate inquiries;

156. The harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment.

157. Defendant NMTCC is liable for the hostile work environment because the harassment was committed by Plaintiff's supervisors and resulted in tangible employment actions against Plaintiff.

158. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, humiliation, loss of dignity, and interference with her ability to perform her job.

159. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including, but not limited to, emotional distress, mental anguish, humiliation, loss of dignity, and interference with her ability to perform her job.

160. As a direct and proximate result of the hostile work environment created by the Defendants, Plaintiff has suffered and will continue to suffer financial and economic damages in the form

of lost wages (front and back pay) and lost benefits.  Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

161. Defendants actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

162. Plaintiff further requests that their attorney's fees and costs be awarded as permitted by law.

163. The conduct of the Defendants deprived Plaintiff of her statutory rights guaranteed under PHRA.

164. Plaintiff has been damaged by the illegal conduct of Defendants.

**COUNT VII**
**PHRA, as amended, 43 P.S. § 955 (d)**
**Retaliation**
**(Against All Defendants)**

165.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

166.    The PHRA prohibits retaliation, making it an unlawful discriminatory practice:

(d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified, or assisted, in any manner, in any investigation, proceeding, or hearing under this act.

*43 Pa. Stat. Ann. § 955(d).*

167. Plaintiff engaged protected activity under the PHRA including but not limited to making formal and informal complaints concerning the discrimination she experienced based on her sex and gender.

168. Plaintiff's protected activity and/or opposition to Defendants' unlawful employment practices was the motivating and/or determinative factor in Defendants' decision to take adverse employment action against Plaintiff.

169. The temporal proximity between Plaintiff's protected activity and Defendants' decision to take materially adverse employment action against Plaintiff is unusually suggestive of a retaliatory motive and gives rise to an inference of causation.

170. Defendants' adverse actions against Plaintiff occurred in retaliation for Plaintiff's prior protected activity and/or opposition to Defendants' unlawful employment practices,

171. These adverse actions were intentional, willful, and made with reckless indifference to Plaintiff's protected civil rights.

172. Defendants' retaliation for Plaintiff's prior protected activity is an unlawful employment practice in violation of the PHRA.

173. As a direct and proximate result of Defendants' retaliatory termination of Plaintiff's employment in violation of PHRA, Plaintiff has suffered and continues to suffer emotional and financial harm.

**COUNT VIII**
**PHRA, as amended, 43 P.S. § 955 (e)**
**Aiding and Abetting**
**(Against All Defendants)**

174. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

175. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order

issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

176. Pursuant to the provisions contained within the PHRA, both employers and individual employees can be held liable for retaliation under Pennsylvania Law. 43 Pa. Cons. Stat. § 955 (e). See also, Dici v. Pennsylvania, 91 F.3d 542, 552 (3d Cir. 1996).

177. Defendants collectively engaged in unlawful discriminatory practices in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

178. As a direct and proximate result of the Defendants' collective retaliatory conduct in violation of the PHRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

179. The Defendants' collective actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the PHRA, warranting the imposition of punitive damages in addition to compensatory damages.

180. Plaintiff demands punitive damages as against Defendants, jointly and severally.

181. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

182. The conduct of the Defendants deprived Plaintiff of her statutory rights guaranteed under the PHRA.

183. Plaintiff has been damaged by the illegal conduct of Defendants.

**COUNT IX**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**
**Interference with FMLA Rights**
**(Against All Defendants)**

184. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

185. The FMLA entitles eligible employees of covered employers to take up to twelve (12) weeks of unpaid leave per year for, among other things, the birth of a child. 29 U.S.C. § 2612(a)(1).

186. The FMLA further guarantees eligible employees the right upon return from qualifying leave to be restored to the same position held before the leave, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

187. At all relevant times, Defendant NMTCC was a covered employer within the meaning of the FMLA, employing fifty (50) or more employees for each working day during each of twenty (20) or more calendar workweeks in the current or preceding calendar year. 29 U.S.C. § 2611(4).

188. At all relevant times, Plaintiff was an eligible employee within the meaning of the FMLA, having been employed by Defendant NMTCC for at least twelve (12) months and having worked at least 1,250 hours during the twelve-month period preceding her leave. 29 U.S.C. § 2611(2).

189. Plaintiff's intermittent medical leave was FMLA-qualifying leave due to the termination of her second pregnancy.

190. Defendants Pardovich, Monastra, and Reinking are individually subject to FMLA liability as they each acted, directly or indirectly, in the interest of Defendant NMTCC in relation to Plaintiff. 29 U.S.C. § 2611(4)(A)(ii)(I).

25

191. Defendants interfered with, restrained, and denied Plaintiff's FMLA rights in the following respects:

    a.  Beginning a campaign of harassment and scrutiny that similarly situated coworkers would not have been subjected to, upon Plaintiff's request for FMLA;

    b.  Contrived, exaggerated, or otherwise false disciplinary proceedings beginning once Plaintiff made a request for accommodation pursuant to FMLA.

    c.  Baseless accusations against Plaintiff of "bullying" another employee who denied any such accusations.

    d.  Increased scrutiny and criticism with regard to Plaintiff's work performance.

192. As a direct and proximate result of Defendants' interference with Plaintiff's FMLA rights, Plaintiff has suffered damages including, but not limited to, lost wages, lost stipends, lost benefits, loss of professional responsibilities and standing, emotional distress, and mental anguish.

**COUNT X**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2)**
**<u>Retaliation for Exercise of FMLA Rights</u>**
**<u>(Against All Defendants)</u>**

193. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

194. The FMLA prohibits an employer from discharging or in any other manner discriminating against any individual for opposing any practice made unlawful by the FMLA, or for exercising or attempting to exercise rights provided under the FMLA. 29 U.S.C. § 2615(a)(2).

195. Plaintiff engaged in protected activity by requesting intermittent medical leave pursuant to the FMLA. Plaintiff further engaged in protected activity by attempting to file a Union Grievance regarding the

196. Following her protected activity, Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

a. Subjecting her to increased scrutiny and criticism;

b. Refusing to respond to her legitimate inquiries about her schedule and position;

c. Subjecting her to a hostile interrogation regarding conversations had with students;

d. Failing to properly investigate her complaints;

e. Threatening Plaintiff with retaliation should she file a formal complaint or union grievance.; and

197. There is a causal connection between Plaintiff's protected activity and the adverse employment actions, as evidenced by the timing of Defendants' actions and their stated reluctance to communicate with Plaintiff due to the EEOC proceedings.

198. Defendants' conduct was willful within the meaning of the FMLA, 29 U.S.C. § 2617(c)(2), in that Defendants knew or showed reckless disregard for whether their conduct was prohibited by the FMLA, entitling Plaintiff to the three-year statute of limitations and liquidated damages.

199. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost stipends, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

**COUNT XI**
**42 U.S.C. § 1983**
**Fourteenth Amendment Equal Protection Clause**
**(Against Defendants Pardovich, Monastra, and Reinking in Their Individual Capacities)**

200. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

201. This count sets forth a claim to redress violations of Section 1 of the Fourteenth Amendment to the United States Constitution (the "Equal Protection Clause") through 42 U.S.C. § 1983.

27

202. The Equal Protection Clause prohibits states from depriving persons of "equal protections of the laws," including discrimination and harassment claims by public employees.

203. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of rights secured by the Constitution or laws of the United States.

204. Under the Equal Protection Clause, public employees have a constitutional right to be free from unlawful discrimination based on sex/gender in public employment.

205. Section 1983 provides that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

206. The contours of Plaintiff's rights are clearly established, and sufficiently clear, such that any reasonable state officer would know that subjecting an employee to discrimination based on race would violate the employee's rights under the Equal Protection Clause.

207. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from discriminating against persons on the basis of sex.

208. At all relevant times, Defendants Pardovich, Monastra, and Reinking were state actors acting under color of state law in their capacities as employees of Defendant NMTCC, a public school district established under Pennsylvania law.

209. Defendants Pardovich, Monastra, and Reinking individually and collectively subjected Plaintiff to intentional discrimination on the basis of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment.

210. Plaintiff's similarly situated male colleagues were not subjected to higher scrutiny, hostile interrogations, or similar adverse treatment.

28

211. Defendants' actions were intentional and motivated by discriminatory animus based on Plaintiff's sex and her status as a pregnant woman and nursing mother.

212. Plaintiff's Title VII claim runs against Defendant NMTCC as the employer. This § 1983 equal protection claim is directed solely against the individual Defendants in their personal capacities, for whom individual liability under Title VII is unavailable. These claims are therefore not duplicative.

213. Because the actions of Defendants Pardovich, Monastra, and Reinking were malicious, wanton, or recklessly indifferent to Plaintiff's federally protected rights, Plaintiff is entitled to punitive damages against each individual Defendant under 42 U.S.C. § 1983.

214. As a direct and proximate result of Defendants' violations of Plaintiff's constitutional rights, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## COUNT XII
## 42 U.S.C. § 1983
## Retaliation for Exercise of First Amendment / Constitutionally Protected Activity
## (Against Defendants Pardovich, Monastra, and Reinking in Their Individual Capacities)

215. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

216. Under the First Amendment to the United States Constitution, made applicable to state actors through the Fourteenth Amendment, public employees retain the right to speak out on matters of public concern without suffering retaliation from their employer.

217. Plaintiff's complaints regarding unlawful sex discrimination, pregnancy discrimination, and denial of FMLA rights, directed to union representatives, administration, the EEOC, and the

29

PHRC, touched on matters of public concern, including compliance with federal anti-discrimination law by a public school district and the equitable treatment of female educators.

218. Defendants Pardovich, Monastra, and Reinking, acting under color of state law, retaliated against Plaintiff for engaging in constitutionally protected speech and petitioning activity.

219. Plaintiff's interest in speaking out on matters of public concern outweighs any legitimate interest of Defendant Defendant NMTCC in the efficient operation of its workplace, particularly where Defendants have failed to articulate any legitimate reason for the retaliatory treatment.

220. Because the actions of Defendants Pardovich, Monastra, and Reinking were malicious, wanton, or recklessly indifferent to Plaintiff's constitutionally protected rights, Plaintiff is entitled to punitive damages against each individual Defendant.

221. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, lost advancement opportunities, emotional distress, mental anguish, humiliation, and loss of dignity.

## INJURY AND DAMAGES

As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of her career and the loss of a salary, bonuses, benefits and other compensation which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, physical pain, humiliation, mental anguish, suffering, inconvenience, injury to reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff Michele E. Schmidt requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Michele E. Schmidt demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including, but not limited to, all compensatory damages, emotional distress, punitive damages, liquidated damages, statutory damages, attorneys' fees and costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: April 1, 2026

**DEREK SMITH LAW GROUP, PLLC**
*Counsel for Plaintiff*
Caroline H. Miller, Esquire
Derek Smith Law Group, PLLC
1628 Pine Street,
Philadelphia, Pennsylvania 19103
Tel: (786) 292-7605
Fax: (305) 503-6741
E-Mail: caroline@dereksmithlaw.com